IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLARICE PRANGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 05 C 2194 |
| vs. ) | |
| ) | Judge Robert W. Gettleman |
| BORDERS, INC., a corporation, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Clarice Prange has sued defendant Borders, Inc. for failing to pay her for hours worked and for firing her in retaliation for complaining about not receiving the pay. On February 9, 2005, defendant agreed to toll the statutes of limitation for plaintiff's wage claims until March 9, 2005. The tolling was further extended to March 23, 2005, at which time plaintiff filed a complaint in the Circuit Court of Cook County, Illinois, alleging that defendant had not paid her for all her hours worked, in violation of the Illinois Minimum Wage Act ("IMWA"), 820 ILCS 105/4(a), and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206. On April 13, 2005, plaintiff's action was removed to this court.

In Counts I and II, plaintiff alleges that defendant violated the IMWA and FLSA, respectively, by not paying her for all the hours she worked from July 1, 2001 through May 1, 2004. In Count III, plaintiff alleges that defendant illegally terminated her in retaliation for her complaint about not being paid appropriately, in violation of the FLSA. Defendant now moves for partial summary judgment. Defendant seeks full judgment on Count III and partial judgment on portions of Counts I and II.

**FACTS**

Plaintiff was formerly an employee in defendant's Oak Park, Illinois store. Plaintiff was hired in July 2000 and worked as a Corporate Sales Representative ("CSR") and a floor employee until her termination on August 31, 2005. The parties do not dispute that plaintiff worked "off-the-clock" hours at the Oak Park Borders store. Off-the-clock hours are hours worked by an employee outside of her scheduled hours that are not recorded or paid by an employer. Store manager Miriam Krekeler testified that she had seen plaintiff at the store when she was not scheduled to work. Lorin Burte, a Borders loss prevention analyst, uncovered plaintiff's off-the-clock hours during an audit in May 2002.

Burte discussed his findings with Krekeler, indicating that plaintiff needed to be documented in payroll and paid for her work. Krekeler then instructed Christina Ziegler, who was in charge of the store's payroll, to alter plaintiff's time records through payroll change procedures in order not to indicate all actual work time. Due to these alterations, plaintiff was forced to obtain other records to reconstruct her actual work hours. Robert Bales, then defendant's regional human relations manager, told plaintiff that he would look into seeing whether there was a way to check log in and log off times via the computer and email. Bales did not inform plaintiff that this was not possible, but he intended to compensate her for her off-the-clock work. During this period, plaintiff believed she did not need to be concerned about the statute of limitations for filing a lawsuit because she was led to believe defendant would voluntarily compensate her for all hours for which she worked but had not been paid.

Plaintiff was never compensated and eventually filed this lawsuit. Defendant claims that during plaintiff's deposition on August 16, 2005, she admitted lying on her employment

2

application by identifying Berwyn Pharmacy as her last employer from 1985 to 1993. Plaintiff listed her position as a "pharmacy assistant and store clerk" at a wage of $8.00 per hour. During her deposition, plaintiff admitted that she "lied about the fact that [she] was getting paid." The parties dispute whether this admission was a lie about being employed by Berwyn Pharmacy. On August 31, 2005, plaintiff was informed that she had been fired by defendant "[b]ecause of [her] false and misleading statement of [her] relationship with Berwyn Pharmacy as that of an employee receiving compensation."

The parties dispute whether it is defendant's policy to fire employees who lie on their job applications. Plaintiff's employment application, which she signed, contained language that obligated her to be "true and complete" on her application and that "any false or misleading information . . . may lead to . . . immediate discharge if discovered at a later date." Plaintiff also admitted to having received and read a copy of defendant's Employee Store Handbook. The handbook, effective August 1, 2000, contains a Standard of Conduct section providing examples of employee activities that may lead to termination, including "[l]ying or falsifying company records or documents" and "[t]he committing of a fraudulent act or a breach of trust under any circumstances." Defendant's Group Employee Handbook, effective February 2003, contains similar language. Defendant claims its company policy is to terminate any employees who violate the policies reflected in the Employee Handbook, and that it was following these policies when it fired plaintiff. Plaintiff disputes this, arguing that defendant does not consistently follow its own policies.

Typically, termination decisions are made the store level, but in the instant case, the decision was made by corporate officials. Lois Thieme, former Borders Senior Manager of

3

Human Resources, received a copy of plaintiff's deposition transcript, which revealed plaintiff had lied on her employment application. Thieme testified that she had a conversation with Gloria Miller, Senior Manager of Field Human Resources, during which it was decided that plaintiff would be fired. Thieme believed Miller made the final decision to terminate plaintiff, but Miller testified that the decision was implicit and assumed as between herself and Thieme. Thieme drafted a termination notice, which Bob Bales used to implement the decision to fire plaintiff.

Prior to the lawsuit, plaintiff was one of defendant's top CSR's, according to Stephen Poirier. After her suit, former Borders Oak Park General Manager Christine Zarzar, at the direction of new District Manager Linda DiMaggio, cut plaintiff's hours as a CSR in half, rescheduling her to work on the floor, although plaintiff's CSR sales goals remained the same. Poirier and Heather Steenrod, head of the corporate sales department, testified that there is a correlation between the number of CSR hours worked and the volume of sales attained, and that reducing a CSR's hours would be counter productive to her corporate sales. Following her cut in CSR hours, Steenrod labeled plaintiff a "leaner," one of the bottom ten Borders' CSR's during one month in 2005.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir.1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth

specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir.1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir.1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir.1993). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

## DISCUSSION

Counts I and II: Statutes of Limitation

Plaintiff seeks to recover unpaid wages under the IMWA (Count I) and FLSA (Count II). An action under the FLSA to recover unpaid wages must be initiated within two years of the accrual of the claim, or within three years of the accrual of a willful violation. 29 U.S.C. § 255. An action under the IMWA must be initiated within three years of the accrual of the claim. 820 ILCS 10/12.

Plaintiff seeks to recover unpaid wages under in both counts as far back as July 1, 2001. Defendant agreed to toll the statutes of limitation from February 9, 2005 until plaintiff filed her

complaint on March 23, 2005. Defendant contends that because plaintiff knew about her wage claims three years prior to filing a complaint, her FLSA claim extends back only to February 9, 2003, and her IMWA and wilful FLSA violation claims extend back only to February 9, 2002. Plaintiff argues that defendant is estopped from asserting a statute of limitations argument under a theory of equitable tolling, or in the alternative, equitable estoppel. Plaintiff contends that because defendant led her to believe she would be compensated for her unpaid wages in April 2004, she should be permitted to sue for recovery of wages as far back as April 1, 2002 under the FLSA and April 1, 2001 for a willful violation of the FLSA and under the IMWA.

Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of [her] claim." Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir. 1990). Plaintiff argues that defendant, specifically Bales, did not provide her the information needed to conduct a damage analysis. Defendant contends that the information plaintiff sough related only to the amount of damages, not the existence of a claim. Although Bales did not respond to plaintiff's information request in a timely manner, her inability to obtain complete login and logout times for her damage analysis had no bearing on her knowledge of the existence of a claim. In fact, plaintiff's request underscores her recognition that she had not been paid correctly and had suffered monetary damages as a result. Plaintiff was advised by her sister, a lawyer, that it was wrong for her to work off-the-clock and that defendant should be reported. Further, if plaintiff did not know she had a claim against defendant, she most likely would have continued working as though nothing was wrong. Plaintiff knew she had worked hours for which she had not been

paid. A reasonable person in that circumstance would have known of the existence of a wage claim. Thus, equitable tolling does not apply in the instant case.

Equitable estoppel prevents application of the statute of limitations bar when a party has induced another into forbearing suit within the applicable limitations period. Bomba v. W.L. Belvidere, Inc., 579 F.2d 1067, 1070 (7th Cir. 1978). Equitable estoppel governs cases "in which the defendant misleads the plaintiff into thinking that he doesn't have to sue yet, or in some other way prevents him from suing within the statutory period." Fidelity Nat. Title Ins. Co. of New York v. Howard Sav. Bank., 436 F.3d 836, 839 (7th Cir. 2006).

Equitable estoppel applies to the instant case. During his deposition, Bales testified that during April 2004, he learned plaintiff had worked off-the-clock and had not been paid. Bales said that he asked former Borders District Manager Beth Caple to investigate plaintiff's situation. He then spoke with plaintiff on the phone. Bales testified that "Clarice was concerned that her job was at risk because she may have done something wrong. And I just guided her to trust Beth, to have the conversation with Beth, and that if, in fact, she was working off the clock, we would compensate her for such time appropriately."

This assurance by Bales effectively misled plaintiff into believing she did not have to sue yet, because defendant would reimburse her for any unpaid wages. Because plaintiff knew she had worked off-the-clock hours and was assured she would be compensated for any such hours, she was persuaded not to take legal action. Plaintiff sued only when it became clear that defendant was not going to pay her. Defendant misled her into believing a lawsuit was unnecessary, thus preventing her from filing suit in a timely manner. Because equitable estoppel

7

applies, plaintiff may sue for recovery of unpaid wages as far back as April 1, 2002 under the FLSA, or April 1, 2001 under the IMWA and for a willful FLSA violation.

IMWA Punitive Damages

In Count I, plaintiff seeks relief that includes punitive damages in the amount of 2% per month on the unpaid back wages as provided in 820 ILCS 105/12(a).[1]  Defendant argues that punitive damages are limited to situations where the Director of Labor sues on behalf of the employee.  Plaintiff urges the court to disregard case law holding that punitive damages are unavailable under the IMWA to litigants who did not assign their claim to the Illinois Director of Labor.  Gelb v. Air Con Refrig. & Heating, Inc., 826 N.E. 2d 391 (Ill. App. Ct. 2005).

This court agrees with Gelb and finds that plaintiff may not seek a 2% monthly punitive damage.  820 ILCS 105/12[2] references a 2% punitive award only in regard to an employee assigning her wage claim to the Director of Labor.  The statute mentions punitive damages in the same sentence as the provision granting the Department of Labor 20% of the total employer's underpayment.  "Such employer shall be liable to the Department of Labor for 20% of the total employer's underpayment and shall be additionally liable to the employee for punitive damages

---

[1] 820 ILCS 105/12(a) was revised by the Illinois legislature on July 14, 2006.  The revised statute deals specifically with the punitive damages problem presented in the instant case.  The statute now provides: "If an employee collects damages of 2% of the amount of underpayments as a result of an action brought by the Director of Labor, the employee may not also collect those damages in a private action brought by the employee for the same violation.  If an employee collects damages of 2% of the amount of underpayments in a private action brought by the employee, the employee may not also collect those damages as a result of an action brought by the Director of Labor for the same violation." 820 ILCS 105/12(a).  The revised statute does not provide for retroactive application and this court sees no reason to give such application.

[2] The applicable version of 820 ILCS 105/12(a) became effective on January 1, 2002.  P.A. 92-392, § 5.

8

in the amount of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. The Director may promulgate rules for the collection of these penalties." 820 ILCS 105/12. The plain language of the statute as it existed during the time relevant to the instant case does not provide for a 2% monthly punitive damage award for employees who do not assign their claim to the Director of Labor. Rather, it associates punitive damages solely with suits brought by the Director on behalf of the inappropriately paid employee. See Palmer v. Great Dane Trailers, 2005 WL 1528255 (N.D. Ill. June 28, 2005).

Plaintiff urges the court "to follow the trend of the courts prior to Gelb (including the ruling by the Seventh Circuit in Uphoff) and hold that defendant is liable under the Illinois Minimum Wage Law for punitive damages of 2% per month from the date wages were due until the date they are paid to the worker." Uphoff dos not so hold, and in fact affirms the district court's ruling disallowing the claim because plaintiff's claims were brought solely under the FSLA. Uphoff v. Elegant Bath, Ltd., 176 F.3d 399, 410 (7th Cir. 1999). It is not apparent how this is relevant to the instant case. Plaintiff also fails to cite support for any "trend." Accordingly, the defendant's motion for summary judgment to eliminate a 2% monthly punitive damage award is granted.

"Straight Time" Hours Worked

In Counts I and II, plaintiff claims that defendant owes her wages for hours worked during weeks she worked less than 40 hours ("straight time") that were not recorded or paid by defendant. Defendant argues that plaintiff may not recover unpaid wages for straight time unless the amount she was paid for any week in which straight time was accrued was less than what she

9

would have earned working 40 hours per week at the statutory minimum wage. See United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 490 (2d Cir. 1960); Ladegaard v. Hard Rock, 2004 WL 1882449 (N.D. Ill. 2004). For example, if plaintiff had been paid $300 for 10 hours worked during a week, and claimed she was owed $900 for 30 unrecorded straight hours, defendant would not be liable for the unrecorded $900 worth of hours. At that time, both the federal minimum wage, $5.15 an hour, and the Illinois minimum wage, $3.35 an hour, would have earned her less money in a 40 hour work week ($206 and $134 respectively) than she earned from her 10 recorded hours ($300). Essentially, defendant argues that under the Klinghoffer rule, because plaintiff was paid "on average" more per hour than a minimum wage earner working 40 hours a week, it does not have to pay plaintiff for her unrecorded hours. Plaintiff argues that neither the FLSA nor the IMWA provide for average minimum wages[3] and that the Klinghoffer rule should not apply in the instant case.

Nearly all courts of appeals, and several courts within this district, have approved the Klinghoffer rule, which bars a plaintiff from stating a claim under the FLSA if she, working less than 40 hours in a week, is paid more than what she would have received had she worked 40 hours in a week at the statutory minimum wage. See Klinghoffer, 285 F.2d at 490; Sherman v. Premium Concrete Cutting, Inc., 2004 WL 1510030 (N.D. Ill.) (collecting cases). Courts in this

---

[3]The federal minimum wage statute, 29 U.S.C. § 206, provides that "[e]very employer shall pay to each of his employees . . . not less than $5.15 an hour beginning September 1, 1997." The Illinois minimum wage statute, 820 ILCS 105/4(a), provides that "on or after July 1, 1985 every employer shall pay to each of his employees in every occupation wages of not less than $3.35 per hour . . . and from January 1, 2004 through December 31, 2004 every employer shall pay to each of his or her employees who is 18 years of age or older in every occupation wages of not less than $5.50 per hour, and on and after January 1, 2005 every employer shall pay to each of his or her employees who is 18 years of age or older in every occupation wages of not less than $6.50 per hour."

10

district have applied the Klinghoffer rule to IMWA claims several times. See O'Brien v. Encotech Construction, 2004 WL 609798 (N.D. Ill.); Sherman, 2004 WL 1510030 at *2-3. This court sees no reason to deviate from these cases. To the extent that plaintiff's pay in weeks she worked less than 40 hours exceeds what a person earning the Illinois and federal minimum wages at 40 hours, defendant is not liable under the IMWA and FLSA, respectively, for plaintiff's "straight time."

Count III: FLSA Retaliatory Discharge

The FLSA prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under" the FLSA. 29 U.S.C. § 215(a)(3). To survive defendant's summary judgment motion on a FLSA retaliatory discharge claim, plaintiff may proceed under the direct method of proof or the familiar burden-shifting approach established in McDonnell Douglas v. Green, 411 U.S. 792, 802-04 (1973).

Under the direct method of proof, the plaintiff can construct a "convincing mosaic" of circumstantial evidence that would allow the fact finder to infer intentional discrimination. Koszola v. Bd. Of Educ. Of City of Chi., 385 F.3d 1104, 1109 (7th Cir. 2004) (citation omitted). If the plaintiff "can prove by means of circumstantial evidence that he engaged in protected activity . . . and as a result suffered the adverse employment action of which he complains, that is fine." Sylvester v. SOS Children's Village Illinois, Inc., 2006 WL 1896394 (7th Cir. 2006) (citations and quotation omitted). Under the McDonnell Douglas burden-shifting approach, the plaintiff must first establish a prima facie case of retaliation by showing she was: (1) engaged in a statutorily protected activity; (2) performing her job according to defendant's legitimate

11

expectations; (3) despite that performance, suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. Luckie v. Ameritech Corp., 389 F.3d 708, 714 (7th Cir. 2004). If the plaintiff meets her burden, the defendant must provide a legitimate reason for any disparate treatment. Johnson v. City of Fort Wayne, 91 F.3d 922, 931 (7th Cir. 1995). If defendant responds with a legitimate reason, the plaintiff must establish that reason as pretextual. Id.

In the instant case, plaintiff presents enough evidence under the direct method, though barely, to establish a genuine issue of material fact to survive summary judgment on her FLSA retaliatory discharge claim. Plaintiff claims that following the initiation of her lawsuit, her hours as a CSR were dramatically altered under the direction of DiMaggio. Rosie Acosta testified that DiMaggio and Zarzar were attempting to understand exactly what a CSR was supposed to do, thus allowing them to hold plaintiff accountable to the responsibilities of the position. Acosta stated that she was instructed by Zarzar to schedule plaintiff half time as a CSR and half time on the floor as a bookseller, cashier, etc. This reduction in CSR hours may have detrimentally affected plaintiff's performance as a CSR, leading to the termination for which see seeks relief. Steenrod testified that she believes there is a correlation between time spent in corporate sales and sales made. Before her hours were cut, Poirier had identified plaintiff as one of Borders' top five CSR's. After plaintiff's hours were cut, Steenrod labeled her a "leaner," one of the bottom ten performers during one month in 2005.

Additionally, Andrea Perlinski, a CSR at the Highland, Indiana Borders store, testified that her CSR hours had not been cut and she had not been told she could only spend half her time as a CSR. There is no evidence on the record that other CSRs under the authority of DiMaggio

12

or Zarzar suffered the same reduction in CSR hours as plaintiff. Nor is there any direct evidence of why plaintiff's CSR hours were cut. Acosta testified that Zarzar told her that DiMaggio determined plaintiff's schedule had to be altered because they weren't doing things correctly. However, neither DiMaggio nor Zarzar were deposed. Taken together, the foregoing is evidence of retaliation for plaintiff's FLSA complaint. Further, the defendant has not established that DiMaggio did not know about plaintiff's lawsuit when establishing the new CSR "directive" that altered plaintiff's hours. There is a triable issue of fact as to whether the reduction in plaintiff's CSR hours was a step toward the termination of plaintiff's employment in retaliation for her FLSA complaint. A jury could reasonably find that plaintiff's lie on her employment application was not the sole reason for her termination.

The disputed facts surrounding the details of plaintiff's termination also prevents summary judgment on the FLSA retaliatory discharge claim. Defendant's lack of knowledge regarding exactly who decided to terminate is curious. Lois Thieme testified that Gloria Miller made the final decision to terminate plaintiff. Miller testified that she and Thieme implicitly determined that plaintiff should be terminated during a casual ten minute meeting. Neither employee who was responsible for plaintiff's firing takes credit for her actions, but rather both characterize the decision as being "assumed," despite their knowing of plaintiff's lawsuit. Instead, Thieme and Miller rest on the claim that they acted consistent with defendant's policy. A reasonable jury could conclude that the lack of clarity in this matter is evidence of a retaliatory discharge, especially when plaintiff had just initiated a lawsuit against defendant. Accordingly, defendant's motion for summary judgment on the FLSA retaliatory discharge claim is denied.

## CONCLUSION

For the reasons discussed herein, defendant's motion for summary judgment is granted in part and denied in part. With regard to Counts I and II, defendant is estopped from asserting a statute of limitations claim under the doctrine of equitable estoppel, but is not liable for plaintiff's "straight time." With regard to Count I, defendant is granted summary judgment on the award of a 2% monthly punitive damage. The motion as to Count III is denied.

**ENTER:** September 11, 2006

_____
**Robert W. Gettleman
United States District Judge**